IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Future Lawn, Inc.,                          Case No. 3:07CV1183

        Plaintiff,

      v.                                       ORDER

Maumee Bay Landscape Contractors, L.L.C.,

        Defendant.

This is a suit over the use of phone numbers to designate the nature of the parties' businesses. Future Lawn, Inc. (Future Lawn) alleges four counts against Maumee Bay Landscape Contractors (Maumee Bay) arising out of Maumee Bay's use of (419) 720-TURF.

This court has jurisdiction under 15 U.S.C. § 1121 (actions arising under the Federal Trademark Act), 28 U.S.C. § 1338(a) (acts of Congress relating to trademarks) and 28 U.S.C. § 1338(b) (pendent unfair competition claims).

Pending are counter-motions for summary judgment. [Docs. 13 & 14]. For the reasons that follow, plaintiff's motion shall be granted in part and denied in part, and defendant's motion shall be denied.

**Background**

Future Lawn is an Ohio corporation that provides landscaping, gardening and lawn care services. Maumee Bay is an Ohio corporation that provides commercial and residential property maintenance; landscape installation, design and maintenance; outdoor power equipment sales;

1

athletic field design, construction, maintenance and supply; outdoor power equipment sales and service; and commercial snow removal.

Prior to November, 1996, Future Lawn used the mark "531-TURF" in connection with its landscaping, gardening and lawn care services. Since November, 1996, plaintiff has used the telephone number (419) 843-8873 (TURF).

Future Law is the owner of a service mark for "843-TURF" (for landscaping, gardening, and lawn care services in Class 42). It registered the mark, U.S. Service Mark Registration No. 2,422,699, on January 23, 2001. This registration remains valid and it is undisputed that Future Law has used the service mark 843-TURF continuously since January, 2001.

Defendant Maumee Bay acquired the telephone number (419) 720-8873 (TURF) when it acquired a telephone number for its new business.[1] Defendant displays 720-TURF on its vehicles, building and advertising materials. This, according to plaintiff, infringes on its 843-TURF service mark.

Future Lawn alleges infringement of plaintiff's federally registered service mark, false designation of origin under 15 U.S.C. § 1125, common law unfair competition and trademark infringement, and violation of Ohio's deceptive trade practices act, O.R.C. § 4165.02.

Maumee Bay argues that its use of the telephone number 720-TURF does not entitle Future Lawn to any relief. Defendant asserts that to succeed, Future Lawn must show 1) it had a valid mark that was entitled to protection and 2) Maumee Bay's action in using 720-TURF was likely to cause confusion with Future Lawn's 843-TURF service mark. Defendant contends that Future Lawn's service mark is generic and not entitled to the protection of the Lanham Act, or, in the alternative,

---

[1] Defendant filed its Articles of Organization for LLC status in March, 2006.

2

that no likelihood of confusion exists between the use of telephone exchanges 720 and 843.

## Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

The standard of review for counter-motions for summary judgment does not differ from the standard when one party files such a motion. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir. 1991). "[T]hat both parties have moved for summary judgment does not mean that the court must grant summary judgment as a matter of law for one side or the other." *Kennedy v. City of Zanesville*, 505 F.Supp.2d 456, 477 (S.D. Ohio 2007). The court must evaluate each motion on its merits. *Id.*

## Discussion

Under the Lanham Act, 15 U.S.C. § 1053, service marks, used to identify the source of services, though technically distinct from trademarks, enjoy the same legal protections. *See Dranoff-Perlstein Assocs. v. Sklar*, 967 F.2d 852, 855 (3d Cir. 1992). The terms "service mark" and "trademark" are often used interchangeably, with no significant legal consequences. *Id.* at 855.

**1. Protection Under the Lanham Act**

The Lanham Act provides that marks registered on the U.S. Patent & Trademark Office's (USPTO) Principal Register "shall be prima facie evidence" of the validity of the registered mark, its registration, the registrant's ownership, and the registrant's exclusive right to use the mark on the goods or services specified in the registration. 15 U.S.C. § 1115(a). Although registration is *prima facie* evidence of an exclusive right, section § 1115(a) specifies that "registration shall not preclude an opposing party from proving any legal or equitable defense or defect . . . which might have been asserted if such mark had not been registered." *Id.*

Trademark law recognizes four categories of marks, based on their levels of inherent distinctiveness: 1) arbitrary terms, 2) suggestive terms, 3) descriptive terms, and 4) generic terms. *Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 594 (6th Cir. 1989). Descriptive marks merit protection only if an additional showing or secondary meaning can be established, *id.*; generic marks, generally, merit no protection under the Lanham Act, *see, e.g., Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992); *Leelanau Wine Cellars, Ltd. v. Black & Red, Inc.*, 502 F.3d 504, 513 (6th. Cir. 2007); *Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc.*, 280 F.3d 619, 636 (6th Cir. 2002).

Telephone numbers may be protected as service marks, and telephone numbers that correlate with marks may be entitled to protection. *See Dial-A-Mattress Franchise Corp. v. Page*, 880 F.2d 675, 678 (2d Cir. 1989); *Chicago World's Fair-1992 Corp. v. 1992 Chicago Worlds' Fair Comm'n*, No. 83-C-3424, slip op. (N.D. Ill. Aug. 16, 1983). Future Lawn's registration of "843-TURF" establishes a presumption that it is a valid service mark.

This presumption of validity, however, is rebuttable. *See Burke-Parsons-Bowlby Corp.*,

*supra*, 871 F.2d 590, 596 (6th Cir. 1989); *Schwinn Bicycle Co. v. Murray Ohio Mfg. Co.*, 470 F.2d 975, 977 (6th Cir. 1972). To rebut the presumption of validity, defendant must "put something more into the scales than the registrant." *Aluminum Fabricating Co. of Pittsburgh v. Season-All Window Corp.*, 259 F.2d 314, 316 (2d Cir. 1958).

Maumee Bay argues that Future Lawn's service mark is not protected by the Lanham Act. In its answer, defendant asks me to declare the registration of 843-TURF invalid and order the USPTO to cancel registration no. 2,422,699 on the grounds that 843-TURF is generic and/or merely descriptive.[2]

In this case, the USPTO mailed Future Lawn a Notice of Acceptance and Acknowledgment of §§ 8 & 15 on December 14, 2006, which read:

> The combined declaration of use and incontestability filed in connection with the registration identified below meets the requirements of Sections 8 and 15 of the Trademark Act, 15 U.S.C. § 1058 and 1065. The combined declaration is accepted and acknowledged. The registration remains in force.

Future Lawn's service mark has not become generic. This is not a case where a product is referred to so frequently by brand name that brand identity is lost; 843-TURF is not understood by the relevant public as a generic name for landscaping, gardening and/or lawn maintenance services.

Plaintiff's service mark is not descriptive. In the Sixth Circuit, "the fact that a mark is registered on the principal register creates a presumption that the mark is not descriptive." *Champions Golf Club v. Champions Golf Club*, 78 F.3d 1111, 1118 (6th Cir. 1996); *see also Schwinn Bicycle Co.*, *supra*, 470 F.2d at 977. Further, the 2006 letter from the USPTO is persuasive

---

[2] A federally registered mark can be canceled "if the registered mark becomes the generic name for the goods or services, or a portion thereof, for which it is registered." 15 U.S.C. §1064(c). This is true even if the owner's exclusive right to use the mark has become incontestable.

5

proof that the registered mark is not merely descriptive. Maumee Bay cannot, therefore, defend this suit on the ground that 843-TURF is generic or descriptive.

In response to the request to cancel registration no. 2,422,699, I agree that in a case such as this, "courts should not overrule the action of the Patent Office to whose care Congress has entrusted the preliminary determination as to whether a mark fulfills the requirements of the statute." *Aluminum Fabricating Co.*, *supra*, 259 F.2d at 316. The USPTO determined that 843-TURF was strong enough to deserve protection under the Lanham Act in 2001. It affirmed its decision in 2006. Accordingly, I "accept the conclusion of the agency which is entrusted with the duty of administering the Lanham Act, and which is undoubtedly expert in these matters." *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1190 (6th Cir. 1988).

## 2. Infringement

A competitor's use of a confusingly similar telephone number may be enjoined as both infringement (under both the Lanham Act and common law) and unfair competition. *See Dial-A-Mattress Franchise Corp*, *supra*, 880 F.2d at 678 (citing *Chicago World's Fair-1992 Corp.*, *supra*).

### A. Service Mark Infringement Under 15 U.S.C. § 1114 and Common Law Service Mark Infringement

To prevail on a service mark infringement claim, a plaintiff must show: 1) ownership of a valid, protectable trademark, 2) defendant's use of the mark in commerce and without the registrant's consent, and 3) likelihood of consumer confusion. *Too, Inc. v. TJX Companies, Inc.*, 229 F.Supp.2d 825, 829 (S.D. Ohio 2002); *see also Holiday Inns, Inc. v. 800 Reservation, Inc.*, 86 F.3d 619, 622-23 (6th Cir. 1996) ("to avoid summary judgment in a Lanham Act case alleging violations of § 32 [15 U.S.C. § 1114] and § 43 [15 U.S.C. § 1125] the nonmoving party must establish that

genuine factual disputes exist concerning those factors that are material to whether confusion is likely in the marketplace as a result of the alleged infringement").

At issue in this case is the third factor – likelihood of confusion – which generally is the key question in trademark infringement cases. *Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002). Proof of infringement requires a showing that the "defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question." *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004).

The Sixth Circuit uses an eight factor test for determining likelihood of confusion: 1) strength of plaintiff's mark, 2) relatedness of the goods or services, 3) similarity of the marks, 4) evidence of actual confusion, 5) marketing channels used, 6) likely degree of purchaser care, 7) defendant's intent in selecting its mark, and 8) likelihood of expansion of the product lines. *Frisch's Restaurants, Inc. v. Elby's Big Boy of Steubenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982); *see also Kellogg Co. v. Exxon Corp.*, 209 F.3d 562, 568 (6th Cir. 2000). The eight *Frisch's* factors "imply no mathematical precision, and a plaintiff need not show that all, or even most, of the factors listed are present in any particular case to be successful." *Wynn Oil Co.*, *supra*, 839 F.2d at 1186. The ultimate question remains "whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997).

The following analysis of the *Frisch* factors leads to the conclusion that Future Lawn has offered sufficient evidence that Maumee Bay's use of 720-TURF creates a likelihood of confusion. Thus, summary judgment in plaintiff's favor on the 15 U.S.C. § 1114 claim and the common law infringement claim is appropriate.

### i. Strength of Plaintiff's Mark

The first *Frisch* factor is the strength of Future Lawn's mark. Maumee Bay claims the 843-TURF mark is not strong because it is generic and/or descriptive. An infringement action may not be defended on the grounds that it is merely descriptive when it has met the requirements of incontestability. *Wynn Oil Co.*, *supra*, 839 F.2d at 1186-87. Because Future Lawn's mark has been registered since January 2001 and meets the requirements for incontestability, it is a strong mark and entitled to the protection of the Lanham Act.

### ii. Relatedness of the Goods or Services

The second *Frisch* factor is relatedness of the goods. Future Lawn's mark is registered for landscaping, gardening and lawn maintenance services. Defendant argues that plaintiff's service mark is, therefore, not similar to defendant's business of commercial and residential property maintenance.

The Sixth Circuit evaluates the relatedness of goods or services by assigning the dispute to a place within a "tripartite system." *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 798 (6th Cir. 2004). If the parties are in direct competition, "confusion is likely if the marks are sufficiently similar." *Id.* at 797. If the services are "somewhat related, but not competitive," the likelihood of confusion determination turns on one of the other factors. *Id.* If the products are unrelated, a likelihood of confusion is "highly unlikely." *Id.*

The services offered by plaintiff and defendant are related. Future Lawn and Maumee Bay both provide landscaping, gardening and lawn maintenance services. To be sure, defendant provides services beyond residential lawn care (such as athletic field services and snow removal); however, the parties' residential lawn care services overlap in the areas of landscaping, gardening and lawn

8

maintenance. Further, the region in which these services are provided overlaps. In the context of residential lawns in Lucas County, the maintenance services overlap to the extent that a customer would consider them substantially identical. Thus, this factor weights in Future Lawn's favor.

### iii. Similarity of the Marks

"Similarity of marks is a factor of considerable weight." *Daddy's Junky Music Stores, Inc.*, *supra*, 109 F.3d at 283. This factor requires an analysis of the "pronunciation, appearance, and verbal translation of the conflicting marks." *Id.*; *see also Audi AG*, *supra*, 469 F.3d at 543. The relevant inquiry is whether "the appearance of the marks is similar enough that it may confuse consumers who do not have both marks before them but who may have a general, vague, or even hazy, impression of the other party's mark." *Wynn Oil*, *supra*, 839 F.2d at 1188 (internal citation omitted).

Future Lawn has used its 843-TURF mark for eleven years; before then, it used 531-TURF. Maumee Bay contends that the marks at issue are not similar because the marks are not identical, and that defendant displays its name, Maumee Bay Landscape Contractors, along with its phone number in all promotional and advertising materials.

In taking into account what a consumer might remember, I must avoid mere side-by-side comparison. The issue is the "likelihood" of confusion, not the mere "possibility" of confusion, among relevant consumers. *See, e.g., A&H Sportswear Inc. v. Victoria's Secret Stores, Inc.*, 166 F.3d 197, 205-206 (3d Cir. 1999) (en banc); *Elvis Presley Enters. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998); *August Storck K.G. v. Nabisco, Inc.*, 59 F.3d 616, 618 (7th Cir. 1995).

Words are easier to recall than numbers. Substitution of words for telephone numbers is a commonplace method businesses use to implant themselves in the minds of current and prospective

9

customers. Where two businesses providing similar services in the same area substitute the same word – especially where the term communicates, at least in a general way, the nature of the business – considerable likelihood of confusion can result.

For over eleven years in the Toledo region Future Lawn has denominated its phone number with the term TURF. I find it quite likely that a customer with a "general, vague, or . . . hazy" recollection of plaintiff's advertising could understand Maumee Bay's use of 720-TURF as another derivation of Future Lawn's mark. At the very least, persons seeking residential lawn care might assume that Future Lawn and Maumee Bay are somehow related, so that, whichever TURF number they call, they are, ultimately, reaching the same provider.

To be sure, plaintiff and defendant are based some distance from each other. To some modest extent, the prefixes of their TURF phone numbers communicate this fact. But that does not moderate the likelihood of confusion. Unless being charged a portal-to-portal fee, customers are not likely to care where someone comes from as long as the work is done as desired. They simply are not likely to give much heed to the particular telephone exchange when recalling that they want to call the TURF phone number to get their grass cut.

This important factor weighs heavily in plaintiff's favor.

#### iv. Evidence of Actual Confusion

While evidence of actual confusion is the best evidence of likelihood of confusion, the absence of actual confusion evidence is inconsequential. *Audi AG*, *supra*, 469 F.3d at 543 (internal citation omitted). Plaintiff concedes that at this stage of litigation there is no evidence of actual

confusion. Defendant's assertion that it identifies itself when answering all calls reduces, in any event, the risk of actual confusion.

### v. Marketing Channels

I must "consider the similarities or differences between the predominant customers of the parties' respective goods or services," *Daddy's Junky Music Stores, Inc.*, *supra*, 109 F.3d at 285, and determine "whether the marketing approaches employed by each party resemble each other," *id.* In analyzing the factor of marketing channels used, I examine the parties' predominant customers and their marketing approaches. *Therma-Scan, Inc.*, *supra*, 295 F.3d at 636.

The predominant customers at issue are purchasers of landscaping services in the Toledo area. The parties' marketing channels include signs on the parties' buildings, signs on the sides of service vehicles, and word of mouth. Defendant argues that consumers "are more likely to be confused as to the ownership of a web site than traditional patrons of a brick-and-mortar store would be of a store's ownership." *Audi AG*, *supra*, 469 F.3d at 544.

I do not disagree; I recognize that defendant prominently displays its business name, Maumee Bay Landscape Contractors, on its building. Although the non-numeric portion of the marks are similar, such prominent display of defendant's trade name on its building, vehicle signs, and advertising material reduces the likelihood of customer confusion.

As for word of mouth marketing, both parties use telephone numbers ending in 8873 (TURF). This "catchy" part creates possible customer confusion and misapprehension. Potential customers learning about lawn care services by word of mouth might believe that the services provided by defendant are somehow connected with or sponsored by plaintiff. For these reason, this factor weighs slightly in Future Lawn's favor.

11

### vi. Likely Degree of Purchaser Care

In assessing the degree of purchaser care, courts generally use the standard of a "typical buyer exercising ordinary caution." *Daddy's Junky Music Stores, Inc.*, *supra*, 109 F.3d at 285. If, however, potential buyers possess special expertise or are sophisticated purchasers of goods, the likelihood of confusion decreases and courts employ a higher standard. *Id.* Similarly, purchasers of more expensive products are more likely to exercise care, thus reducing the possibility of confusion. *Id.*

Plaintiff urges that purchasers of landscaping services are casual consumers and exercise only ordinary caution. Defendant argues that their business focuses on providing services that are not obviously inexpensive and do not necessarily involve casual consumers. While I agree that purchasers of landscaping services may be likely to exercise more than ordinary care in some circumstances, I find that consumers selecting residential landscapers on the basis of a catchy phone number are likely to be exercising only ordinary caution. Therefore, this factor weighs in favor of plaintiff.

### vii. Defendant's Intent in Selecting the Mark

The seventh *Frisch* factor is defendant's intent in selecting the mark. This is "a critical factor, since if the mark was adopted with the intent of deriving benefit from the reputation of [the plaintiff], that fact alone may be sufficient to justify the inference that there is confusing similarity." *Audi AG*, *supra*, 469 F.3d at 544 (citing *Frisch's Restaurants, Inc.*, *supra*, 670 F.2d at 648).

There is no basis in the record to find that defendant chose its TURF number to piggyback on plaintiff's reputation. This does not, however, "preclude a finding that there was a likelihood of

confusion." *Vistein v. American Registry of Radiologic Technologists*, 509 F.Supp.2d 666, 704 (N.D. Ohio 2007). In this case, the "defendant's intent" factor favors the defendant.

### viii. Likelihood of Expansion of the Product Lines

A strong likelihood that the alleged infringer will expand its business to compete with a senior user will contribute to a finding of a violation. *Daddy's Junky Music Stores, Inc.*, *supra*, 109 F.3d at 287. Plaintiff argues that the parties already compete in the same market, and therefore this factor is irrelevant. While defendant provides some services that plaintiff does not offer, both are in the residential lawn maintenance business. Viewed thus, there is enough similarity between the parties that the expansion factor is irrelevant.

### 3. False Designation of Origin Under 15. U.S.C. § 1125

To establish liability for false designation of origin under section 1125, a plaintiff must show 1) the false designation has a substantial effect on interstate commerce, and 2) the false designation creates a likelihood of confusion. *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1998).

"Commerce" means "all commerce which may lawfully be regulated by Congress" and that includes intrastate commerce which has a substantial effect on interstate commerce. 15 U.S.C. § 1127; *Lyon v. Quality Courts United, Inc.*, 249 F.2d 790, 795 (6th Cir. 1957) (citing *Mandeville Island Farms v. American Crystal Sugar Co.*, 334 U.S. 219, 232-237 (1948). "A substantial effect on interstate commerce is present when the trademark owner's reputation and good will, built up by use of the mark in interstate commerce, are adversely affected by an intrastate infringement." *Coca-Cola Co. v. Stewart*, 621 F.2d 287, 290 (8th Cir. 1980) (citing *Franchised Stores of New York, Inc. v. Winter*, 394 F.2d 664, 669 (2d Cir. 1968)).

Facts showing the plaintiff's use of its mark in interstate commerce are set out in the complaint – Future Lawn indicates that it serves customers in Ohio and Michigan. Plaintiff has sufficiently alleged facts showing that defendant's use of the TURF mark impacts interstate commerce.

### 4. Common Law Unfair Competition

The analysis of an unfair competition claim under Ohio law is the same as that for a claim under the Lanham Act. *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 920 (6th Cir. 2003) ("Because trademark claims under Ohio law follow the same analysis as those under the Lanham Act, our discussion of the federal trademark claims will therefore encompass the state trademark claims as well."); *Abercrombie & Fitch Stores, Inc.*, *supra*, 280 F.3d at 626 n.2 ("Both Ohio and federal courts have recognized that the same analysis applies to claims under Ohio's statutory and common law of unfair competition and the Lanham Act.").

The federal unfair competition statute provides in relevant part:

(1) Any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof . . . which . . .

> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125.

The law of trademarks is a subcategory of the more general law of unfair competition. *See Parameter Driven Software, Inc. v. Massachusetts Bay Ins. Co.*, 25 F.3d 332, 337 (6th Cir. 1994). The Sixth Circuit uses the same test to decide whether there has been service mark infringement or unfair competition: the likelihood of confusion between the two marks, *Audi AG*, *supra*, 469 F.3d at 542 (citing *Two Pesos*, *supra*, 505 U.S. at 780). Because defendant's use of 720-TURF creates a likelihood of confusion, I accordingly find that defendant's acts constituted unfair competition under Ohio common law.

### 5. Ohio's Deceptive Trade Practices Act, O.R.C. § 4165.02

The Ohio Deceptive Trade Practices Act prohibits any person from causing a "likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services," O.R.C. § 4165.02(A)(2), and causing a "likelihood of confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another," O.R.C. § 4165.02(A)(3).

Claims for trademark infringement and false designation of origin under the Ohio Deceptive Trade Practices Act are subject to the same likelihood of confusion standards as its federal counterpart. *Victoria's Secret Stores v. Artco Equip. Co.*, 194 F.Supp.2d 704, 724 n.8 (S.D. Ohio 2002) ("The Court notes the same analysis applies to [federal] trademark infringement, unfair competition, Ohio common law, and Ohio's deceptive trade practices statutes."); *Interactive Products Corp. v. a2z Mobile Office Solutions, Inc.*, 195 F.Supp.2d 1024, 1030 (S.D. Ohio 2001).

No genuine issues of material fact remain as to the likelihood of confusion caused by defendant's use 720-TURF. Accordingly, Future Lawn is entitled to summary judgment on its service mark infringement claim under the Lanham Act, its common law infringement claim, its common law unfair competition claim, and its Ohio Deceptive Trade Practices Act claim.

15

### 6. Injunctive Relief

Plaintiff argues that it suffers and will continue to suffer irreparable injury if an injunction does not issue. I find there is minimal harm to the Maumee Bay, as an injunction will merely require defendant to comply with the Lanham Act. In contrast, Future Lawn faces hardship from loss of sales and damage to good will. 843-TURF and 720-TURF are confusingly similar enough to warrant an injunction. *Dial-A-Mattress Franchise Corp.*, *supra*, 880 F.2d at 678.

Finally, it is in the public's interest to issue a permanent injunction. Congress has elected to grant certain rights to the owners of a service marks; "it is virtually axiomatic that the public interest can only be served by upholding" these protections. *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983). The injunction shall bar defendant from using TURF to denominate its phone number within the Toledo-area market served jointly with plaintiff.

### 7. Actual Damages

Having examined the parties' briefs, I find that genuine issues of material fact remain in regards to defendant's profits and the actual damages suffered by plaintiff. This finding precludes summary judgment on the issue of actual damages.

### 8. Attorney Fees, Costs, and Punitive Damages

The Lanham Act authorizes an award of "reasonable attorney fees to the prevailing party" in exceptional cases. 15 U.S.C. § 1117(a). Such an award is available in trademark infringement cases where the acts of infringement can be characterized as malicious, fraudulent, deliberate or willful. *Ford Motor Co. v. Cross*, 441 F.Supp.2d 837, 854 (E.D. Mich. 2006).  The Ohio Revised Code provides for fees and costs in  § 4165.03(b),and provides that "attorney's fees may be assessed

16

against a defendant if the court finds that the defendant has willfully engaged in a trade practice . . . knowing it to be deceptive."

In this case, defendant's acts of infringement were not malicious, fraudulent, deliberate or willful. Nor were they willfully deceptive. Future Lawn is not entitled to reasonable attorney fees, costs, or punitive damages.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED THAT

1. Plaintiff Future Lawn Inc.'s motion for summary judgment [Doc. 13] be, and the same is hereby granted in part and denied in part;

2. Defendant Maumee Bay Landscape Contractors, L.L.C.'s motion for summary judgment [Doc. 14] be, and the same is hereby denied; and

3. Defendant Maumee Bay Landscape Contractors, L.L.C. and its successors and assigns and the owners, directors, officers, employees and agents thereof be, and the same hereby are permanently enjoined from denominating its telephone number by the term "TURF."

4. A scheduling conference is set for April 28, 2008 at 1:00 pm.

So ordered.

> s/James G. Carr
> James G. Carr
> Chief Judge